

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-23-2009

# USA v. Anthony Corbin

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1550

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Anthony Corbin" (2009). *2009 Decisions*. Paper 1488.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1488

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-1550

_____

UNITED STATES OF AMERICA

v.

ANTHONY CORBIN,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(Criminal No. 06-cr-00990)
District Judge: Honorable Anne E. Thompson

_____

Submitted Under Third Circuit LAR 34.1(a)
January 9, 2009

_____

Before: CHAGARES, HARDIMAN *Circuit Judges*, and ELLIS, *Senior District Judge.*[*]

(Opinion Filed: April 23, 2009)

_____

OPINION

_____

ELLIS, *Senior District Judge*.

---

[*] The Honorable T. S. Ellis, III, Senior District Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

Anthony Corbin appeals his 50-month sentence for making a threatening communication in violation of 18 U.S.C. § 875(c), arguing that:

(i)     the District Court erred in imposing Corbin's sentence based on, *inter alia*, Corbin's lack of personal values, immaturity, and poor attitude towards personal relationships;

(ii)    the District Court erred by imposing a longer term of incarceration based on Corbin's need for mental health treatment;

(iii)   the District Court erred by improperly considering acquitted conduct as a basis for Corbin's sentence; and

(iv)    Corbin's 50-month sentence, which was above the advisory Sentencing Guidelines range of 10 to 16 months, was substantively unreasonable.

For the reasons stated here, we affirm.

I.

Because we write solely for the benefit of the parties, we only briefly summarize the essential facts and procedural history.

On December 14, 2006, a grand jury returned a two-count indictment against Corbin, charging him with (i) a July 9, 2004, bank robbery of a Commerce Bank in Point Pleasant, New Jersey, in violation of 18 U.S.C. §§ 2113(a) and 2 ("Count One"); and (ii) making a threatening communication to his ex-girlfriend on November 11, 2006, in violation of 18 U.S.C. § 875(c) ("Count Two"). Corbin pled not guilty to both counts. The case proceeded to trial, and on May 9, 2007, a jury acquitted Corbin on Count One and

convicted him on Count Two.[1]

During the course of the trial, Corbin testified in his own defense and acknowledged, *inter alia*, (i) that during a November 11, 2006, phone conversation with his ex-girlfriend, who is also the mother of his son, Corbin threatened to kill her and her family; and (ii) that during a November 18, 2006, phone conversation with the same ex-girlfriend, he referred to "stolen bank money" he obtained when he had previously "robbed the banks." Appellant's App. (App.) 190–192, 364. With respect to the threat to kill his ex-girlfriend and her family, Corbin testified that he never intended to follow through; rather, he claimed that the death threat was an overly emotional reaction to the former couple's ongoing dispute regarding the care, custody, and visitation of their son. With respect to the bank robbery references, Corbin testified that he had never robbed any banks; rather, he claimed that he used the word "bank" as slang for a narcotics "stash house" and that he had robbed such stash houses on multiple previous occasions. *Id.* at 191.

Following the jury's guilty verdict on Count Two, a presentence investigation report (PSR) was prepared. The PSR calculated Corbin's total offense level for the count of conviction as 12 and his criminal history category as I, resulting in an advisory

---

[1] Although the indictment also charged a co-defendant on Count One, that defendant was acquitted at trial, and his involvement in the trial is immaterial to this sentencing appeal.

Guidelines range of 10 to 16 months.[2] On January 8, 2008, Corbin appeared for

sentencing, at which point the government urged the District Court to impose a variant

sentence above the advisory Guidelines range. Specifically, the government argued that a

variant sentence closer to the 60-month statutory maximum was justified by a proper

weighing of the 18 U.S.C. § 3553(a) factors because, *inter alia*, (i) "the venom, the

hatred, [and] the animosity" of the threatening communication in this case warranted

increased punishment; and (ii) the District Court should consider the acquitted conduct

charged in Count One, which the government argued had been proven by a

preponderance of the evidence, in evaluating Corbin's history and personal

characteristics. *Id.* at 309.

Corbin objected to the government's request, both on the basis that the government

had not provided prior notice of its intention to seek a variant sentence and on the basis

that proper weighing of the § 3553(a) sentencing factors did not justify a variant sentence

in this case. Corbin, by counsel, argued that the District Court should consider various

mitigating factors, including Corbin's mental health problems and physical abuse he

suffered as a child. After hearing from both parties, the District Court observed that the

advisory Guidelines range appeared "inadequate for punishment for this defendant" and

that it was necessary to "consider how close to the [five-year] maximum this sentence

---

[2] The record reflects some dispute at sentencing regarding whether Corbin should
have received a two-point reduction for acceptance of responsibility. Corbin did not
ultimately receive that reduction, and he has not challenged that ruling on appeal.
Accordingly, we need not address the issue here.

should be." *Id.* at 311–12. In light of those views, the District Court continued the sentencing and afforded both parties an opportunity to submit written memoranda on the questions presented by the government's request for a variant sentence.

The parties complied, and approximately five weeks later, on February 13, 2008, Corbin reappeared for sentencing. The government again urged imposition of a variant sentence above the advisory Guidelines range and near the five-year statutory maximum, arguing, *inter alia*, (i) that the seriousness of this particular offense—a death threat—justified increased punishment; (ii) that the acquitted conduct charged in Count One, which was proven by a preponderance of the evidence at trial, warranted a longer term of incarceration; and (iii) that Corbin's history and characteristics—including his claim when testifying in his own defense that he had robbed drug stash houses on multiple occasions—suggested that an increased term of imprisonment was necessary to protect the public. Corbin responded, by counsel, arguing that a variant sentence was not justified, *inter alia*, because:

(i)     consideration of acquitted conduct would violate his Sixth Amendment jury trial rights;

(ii)    the convicted offense conduct was a result of "extreme frustration based on the fact that [the ex-girlfriend] was unwilling to let Mr. Corbin see their child";

(iii)   Corbin never intended to carry out the threat;

(iv)    Corbin turned himself in to authorities upon learning of the warrant issued for his arrest;

> (v)     Corbin was depressed in November 2006 as a result of his mother's March 2006 passing; and
>
> (vi)     Corbin suffered both from childhood physical abuse and from severe emotional problems.

*Id.* at 328. In addition, during the course of allocution, Corbin discussed that during his incarceration pending trial and sentencing, he had sought out counseling, been put on psychotropic medications, and received treatment for his emotional and mental problems. The District Court questioned Corbin with respect to whether he provided financial support to his son, and Corbin acknowledged that although he occasionally provided some support, his ex-girlfriend was his son's primary provider.

Following allocution, the District Court imposed a 50-month term of incarceration. In discussing the basis for the sentence imposed, the District Court first observed that § 3553 requires a sentence that, looking to the seriousness of the offense conduct, both promotes respect for the law and provides just punishment for the offense. In that respect, the District Court cited the "intensity" and "serious" nature of Corbin's threat to kill his ex-girlfriend and her family as warranting increased punishment. *Id.* at 336. In addition, the District Court rejected Corbin's proffered justification for his actions—that he was emotionally distraught over not seeing his son—because the District Court found the explanation was belied both by Corbin's decisions "not to work[] [and] not to take responsibility as a father" and by Corbin's apparent "feel[ing] that he shouldn't have to go to the trouble of coming to visit his son." *Id.* at 337. The District Court also

emphasized that the sentence imposed must both "afford adequate deterren[ce]" and "protect the public from further crimes of this defendant." *Id.* In that regard, the District Court noted an "overall impression" of Corbin that was "negative[.]" *Id.* at 336, 337. The District Court based this observation primarily on Corbin's "lack of character" and "lack of maturity" that became evident during his trial testimony. *Id.* at 337. Although the District Court noted both the need to avoid "unwarranted sentence disparities among . . . defendants with similar records" and the reality that Corbin did "not have a criminal history that would prompt the Court to punish him as a repeat offender," the District Court found that Corbin's testimony demonstrated a "proclivity to violence" that warranted a longer term of incarceration. *Id.* at 338. Specifically, the District Court found that Corbin's willingness during his trial testimony to claim "in a very relaxed way" that he had committed prior criminal acts justified an increased term of imprisonment. *Id.* With respect to the acquitted conduct charged in Count One, the District Court observed as follows:

> Now, the acquitted conduct, the bank robbery in New Jersey for which the jury did not find proof beyond a reasonable doubt, certainly there was proof by a preponderance of the evidence. . . . But I'm not sure it's necessary to rely upon that in imposing a higher than [G]uideline sentence in this case because [Corbin] revealed such a lack of maturity, a lack of self-control, a lack of personal values when he testified.

*Id.* at 337–38. Finally, the District Court observed that Corbin was "in need of correctional treatment" and that "it would be helpful, clearly, for [Corbin] to have the benefit of the kind of counseling and corrective treatment that he could receive" during

any period of incarceration. *Id.* at 338.

Corbin filed his timely notice of appeal the next day, and four days later, the District Court filed a written explanation of reasons for the variant sentence imposed. The District Court essentially reiterated the bases elucidated at the sentencing hearing, including, *inter alia*, (i) Corbin's "violent volatile personality" and "lack of personal values"; (ii) the "hypocritical" nature of Corbin's explanation for his actions, which the District Court found to be part of "a struggle for power or a self-image struggle rather than a display of fatherly love or frustration"; and (iii) Corbin's "unwillingness to take responsibility for his actions[.]" *Id.* at 6. The written explanation confirmed that the District Court imposed the variant sentence "without relying upon" the acquitted conduct charged in Count One, and the District Court again observed that Corbin "would benefit from anger management counseling and parental responsibility counseling" while incarcerated. *Id.*

## II.

We exercise appellate jurisdiction over Corbin's claims of sentencing error under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Our standard of review differs based on whether the alleged sentencing error was raised below. If so, we review for abuse of discretion; if not, we review for plain error. *See United States v. Lloyd*, 469 F.3d 319, 320 (3d Cir. 2006).

Where we review for abuse of discretion, "our role is two-fold." *United States v.*

*Wise*, 515 F.3d 207, 217 (3d Cir. 2008). First, we must "ensure that the district court committed no significant procedural error" in imposing sentence. *Id.* Second, "[i]f we determine that the district court has committed no significant procedural error, we then review the substantive reasonableness of the sentence[.]" *Id.* at 218. With respect to the first inquiry, a district court commits significant procedural error by, *inter alia*,

> failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*Gall v. United States*, 128 S. Ct. 586, 597 (2007), *quoted in Wise*, 515 F.3d at 217. Of course, "we do not defer to a district court when the asserted procedural error is purely legal," and "a district court will be held to have abused its discretion if its decision was based on . . . an erroneous legal conclusion." *Wise*, 515 F.3d at 217 (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)). With respect to the second inquiry—review of a sentence's substantive reasonableness—we review for abuse of discretion "regardless of whether [the sentence] falls within the Guidelines range." *Id.* at 218 (citing *Gall*, 128 S. Ct. at 597). Accordingly, "[a]s long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm." *Id.*

> Where we review for plain error, we have described the analysis as follows:
>
> There must be an error that is plain and that affects substantial rights. The deviation from a legal rule is error, and an error is plain if it is clear or

obvious. In most cases, an error affects substantial rights if it is prejudicial, *i.e.*, affected the outcome of the district court proceedings. . . . We will exercise our discretion and vacate the sentence if the plain error affecting substantial rights also seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Evans*, 155 F.3d 245, 251 (3d Cir. 1998) (internal quotations and citations omitted), *quoted in United States v. Voelker*, 489 F.3d 139, 153–54 (3d Cir. 2007).

With these principles in mind, we turn to Corbin's allegations of sentencing error.

III.

Corbin's first argument, distilled to its essence, is that the District Court committed significant procedural error by imposing sentence based on Corbin's personal values, character, maturity level, and attitude towards personal relationships—factors that Corbin argues are irrelevant under § 3553(a). We disagree. Specifically, we see no distinction between § 3553(a)(1)'s specific mandate that district courts consider the "history and characteristics of the defendant" and the District Court's evaluation in this case of Corbin's values, character, maturity level, and attitude towards personal relationships. Indeed, it is clear that the District Court's findings with respect to Corbin's history and personal characteristics were relevant to the determination that a variant sentence was necessary to reflect the seriousness of the offense, to afford adequate deterrence, and to protect the public. *See* § 3553(a)(2)(A)–(C). Specifically, the District Court relied upon

an assessment of Corbin's credibility in rejecting his "hypocritical" attempt to mitigate the seriousness of his offense conduct by arguing that he made the threats out of frustration and love for his son. App. 6. The District Court also relied on observations about Corbin's values, character, and maturity level in finding that his "proclivity to violence" justified an increased sentence for both deterrence and incapacitation purposes.[3] *Id.* Accordingly, because the District Court's consideration of Corbin's values, character, maturity level, and attitude towards personal relationships was consistent with § 3553(a)'s mandates, we find no procedural error—let alone a significant procedural error—in this regard.[4]

IV.

We find Corbin's second argument—that the District Court committed significant procedural error by imposing a longer term of incarceration based on Corbin's need for mental health treatment—to be equally without merit. To be sure, Corbin correctly cites our holding in *United States v. Manzella*, 475 F.3d 152, 162 (3d Cir. 2007), that district

---

[3] Not surprisingly, Corbin cites no authority, nor have we found any, supporting his argument that the District Court's consideration of his history and personal characteristics was inappropriate. This is sensible, as Corbin's argument, if accepted, would lead to an unwarranted, restrictive interpretation of Congress's broad mandate in § 3553(a)(1) that a district court consider a defendant's personal history and characteristics in tailoring a sentence that furthers the goals enumerated by § 3553(a)(2).

[4] Although the parties devote substantial effort to the appropriate standard of review for this argument, we need not resolve the parties' dispute in this regard, as we find that the District Court committed no error—plain or otherwise—in considering Corbin's values, character, maturity level, and attitude towards personal relationships in imposing sentence.

courts are prohibited from "effecting . . . rehabilitative goals . . . either in sentencing a defendant to a term of imprisonment or, if a term of imprisonment is otherwise to be imposed, in determining the length of that term." Yet, our review of the record makes it pellucidly clear that the District Court did not do so here. Rather, the District Court merely observed that during any term of incarceration, Corbin would benefit from mental health treatment and counseling. *See United States v. Watson*, 482 F.3d 269, 275 (3d Cir. 2007) (observing that the "mere fact that a [district] court may take into account or mention correction or rehabilitation along with other factors in arriving at or explaining its [overall] *sentence*" does not demonstrate that the district court imposed a term of *incarceration*, or determined the length of that term, for rehabilitative purposes (emphasis in original)). Moreover, both Corbin and his counsel *raised* his need for mental health treatment at sentencing as a *mitigating* factor, and the District Court's observation that Corbin could receive such treatment while incarcerated was not a procedural error—let alone a significant procedural error—in imposing sentence.[5]

V.

Next, we find it unnecessary to address Corbin's third argument—that sentencing Corbin based on the acquitted conduct charged in Count One constituted significant procedural error because it violated his Sixth Amendment jury trial rights—because we

---

[5] Again, although the parties devote substantial effort to the appropriate standard of review, we need not resolve the parties' dispute in that regard, as we find that the District Court did not rely on Corbin's need for mental health treatment in imposing a term of incarceration or in fixing the length of that term.

find that the District Court did not impose the variant sentence based on that conduct. Indeed, the District Court stated at sentencing that it was not necessary to rely on that conduct, and the District Court's written statement of reasons plainly confirmed that the acquitted conduct was not the basis for the variant sentence imposed. Accordingly, we need not address the parties' arguments with respect to the appropriateness of considering acquitted conduct at sentencing.[6]

## VI.

Corbin's final argument is that even absent a finding that the District Court committed significant procedural error, we should nonetheless reverse the 50-month variant sentence imposed here on the basis that it was substantively unreasonable. We disagree. Importantly, we are mindful of the Supreme Court's holding in *Gall* that in reviewing variant sentences for substantive reasonableness under the appropriate abuse-of-discretion standard, we must "give due deference to [a] district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." 128 S. Ct. at 597.

---

[6] It is worth noting that it appears a district court may, in fact, base a sentence on acquitted conduct provided that conduct has been proven by a preponderance of the evidence and the sentence imposed is within the statutory range for the convicted offense. *See, e.g., United States v. Grier*, 475 F.3d 556, 567–68 (3d Cir. 2007) (reliance on facts that may constitute a "separate offense," if considered in sentencing within the statutory range for the convicted offense, "do[es] not implicate the rights to a jury trial and proof beyond a reasonable doubt" because those facts "do not constitute 'elements' of a 'crime' " (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000))), *quoted in United States v. Jiminez*, 513 F.3d 62, 88 (3d Cir. 2008) *and United States v. Ali*, 508 F.3d 136, 145–46 (3d Cir. 2007); *see also United States v. Watts*, 519 U.S. 148, 157 (1997); *United States v. Martinez*, 525 F.3d 211, 215 (2d Cir. 2008) (citing *Grier*, 475 F.3d at 567–68); *United States v. White*, 551 F.3d 381, 384–85 (6th Cir. 2008) (same).

This is sensible, as " 'the sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant[.]' " *Id.* at 597–98 (quoting *Rita v. United States*, 127 S. Ct. 2456, 2469 (2007)). Indeed, in determining whether a variance is justified by "the totality of the circumstances," it is clear that " '[d]istrict courts have an institutional advantage over appellate courts[.]' " *Id.* at 597, 598 (quoting *Koon*, 518 U.S. at 98). Accordingly, "[t]he fact that [an] appellate court might reasonably . . . conclude[] that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* at 597.

With these principles in mind, we find that the District Court imposed a substantively reasonable sentence when it found that a variant sentence of 50 months was sufficient, but not greater than necessary, to reflect the seriousness of Corbin's death threat, to provide just punishment for that threat, to afford adequate deterrence, and to protect the public. Indeed, we find it difficult to imagine a more serious threatening communication than the one Corbin made—to murder his ex-girlfriend and her family—and it is understandable that the District Court found a variant sentence to be just punishment for that threat. Moreover, in light of the District Court's superior institutional position from which to assess the import of Corbin's trial testimony, we see no reason to disagree with the finding that Corbin's apparent proclivity to violence, immaturity, lack of values, and poor attitude towards personal relationships justified a variant sentence to afford adequate deterrence and to protect the public from further crimes by Corbin.

Accordingly, we find that the 50-month variant sentence imposed here, reviewed for abuse of discretion, was substantively reasonable.

## VII.

For the foregoing reasons, we affirm the District Court's judgment.